IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

STATE NATIONAL INSURNACE COMPANY and NEXT INSURANCE COMPANY

    Plaintiffs,

v.

ROBERT CARLIN d/b/a HANDYMAN CAN ALL TRADES CONSTRUCTION, an individual.

    Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiffs, State National Insurance Company and Next Insurance Company, through their attorneys, Tucker Holmes, P.C., submit the following Complaint for Declaratory Judgment and in support thereof, state and allege as follows:

### PRELIMINARY STATEMENT

This is an action for declaratory relief brought pursuant to the provisions of Rule 57 of the Federal Rules of Civil Procedure. In this action between an insurer and its insured, State National Insurance Company ("State National") and Next Insurance Company ("Next") seek a determination from the Court that a duty to indemnify and a duty to defend their insured, Robert Carlin d/b/a Handyman Can All Trades Construction ("Handyman") do not exist. Next Insurance is an agent which represents State National.

## PARTIES

1. Plaintiff Next, which is the agent and administrator for State National, is a citizen of California, with its principal place of business in Palo Alto, California.

2. Plaintiff State National, which is the insurer of Defendant, is a citizen of Texas, with its principal place of business in Dallas, Texas.

3. Defendant Robert Carlin d/b/a Handyman is a citizen of Colorado, with his principal place of business in Peyton, Colorado.

## JURISDICTION AND VENUE

4. This Court has proper subject matter jurisdiction. Next and State National have no adequate remedy at law and, therefore, request that this Court terminate the uncertainty and controversy giving rise to this proceeding.

5. The amount is controversy in this action, including the cost for the defense that Plaintiffs have provided Defendant under a reservation of rights, exceeds Seventy-Five Thousand Dollars ($75,000.00).

6. Jurisdiction in this matter is based upon diversity of citizenship under 28 U.S.C. § 1332.

7. Venue is proper, pursuant to 28 U.S.C. § 1391(b)(2), because the insurance contract subject to this action, issued by State National, was issued in Colorado to a Colorado insured, and the performance claimed to be due occurred in Colorado.

**GENERAL ALLEGATIONS**

8. State National a commercial liability insurance policy in Colorado to Defendant Handyman which afforded liability limits of $1,000,000 per occurrence and $1,000,000 in the aggregate, and a personal and advertising injury limit of $1,000,000, and any one person, products completed/operations aggregate limit of $1,000,000. The policy also includes a Contractors Errors and Omissions Coverage Part with liability limits of $10,000 per occurrence and $20,000 in the aggregate with a deductible of $500 per loss. A true and correct copy of State National policy, number NXTXCF0AN-00-GL, with a policy period of December 17, 2018, to December 17, 2019, is appended hereto as **Exhibit A** and incorporated by reference herein.

9. On November 13, 2019, Roberts Electrical Contracting file a mechanic's lien foreclosure action in El Paso County District Court, in the State of Colorado, case number 2019CV32599.

10. On March 13, 2020, one of the defendants in the above-referenced action, SSP-720 Chapman, LLC, which owns Thrive at Park's Edge Apartments f/k/a Pine Creek Apartments filed cross claims against Farrington, who was the general contractor, and Dynamic, the roofing contractor.

11. On June 10, 2020, owners of various apartment complexes, including SSP-70 Chapman, LLC, filed amended cross claims and named Carpenter's Touch as a cross claim defendant. They alleged that on May 24, 2018, Farrington was retained as the general contractor for certain remodeling at Pine Creek, New Horizon, Cedar Creek, Shannon Glen, El Vecino,

Timbers and South Pointe apartment complexes in Colorado Springs, Colorado. Farrington began work on these complexes on or around August of 2018.

12. The amended cross claims further allege that Farrington entered into a subcontract with Carpenters Touch to install windows and exterior sliding glass doors and related work at Pine Creek, Cedar Creek, Shannon Glen and Timbers. Farrington was terminated on or around July 30, 2019, by the various owners pursuant to the contract. The owners allege that various issues arose regarding the quality of work.

13. The owners allege that they found construction defects and deficiencies in the work performed by Carpenters Touch at the apartment complexes and that Carpenters Touch failed to remedy these problems. On February 7, 2020, the owners sent Carpenters Touch a Notice of Claim pursuant to C.R.S. § 13-20-803.5 identifying the defects. The owners then brought cross claims against Carpenters Touch on June 10, 2020. The cross claims pertained to the defects and deficiencies regarding the removal and installation of windows and exterior doors.

14. Carpenters Touch filed an answer to the second amended cross claims on January 22, 2021.

15. On April 30, 2021, Carpenters Touch filed a motion for leave to file a fourth party complaint. In the complaint they allege that Handyman and other subcontractors were responsible for the defects and deficiencies regarding the removal and installation of windows and exterior doors.

16. Specifically, it is alleged that Handyman's workmanship was defective in the removal and replacement of exterior windows at Pine Creek Apartments, including the use of

improper screws, use of non-structural shims during installation, installation of the windows with improper sealing within the window openings, and installing the windows without a watertight seal.

17. In the fourth party complaint, Handyman is further accused, in addition to other subcontractors, of damage from the disturbance, release and discharge of asbestos containing material at the Pine Creek property. This required the evacuation of tenants and required specialized cleaning of the interior and exterior of the property. This also delayed the overall construction work.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment that State National and Next Do Not have a Duty to Indemnify or Defend Handyman)**

18. Plaintiffs re-assert and incorporate herein, by reference, the allegations contained in Paragraphs 1 through 17 as if fully set forth herein.

19. A dispute exists between Plaintiffs and Defendant as to the existence, nature and extent of Plaintiffs' obligations, if any, to Defendant under the applicable insurance policy.

20. Plaintiffs assert that they do not owe a duty to defend or indemnify in the underlying action wherein Defendant Handyman is named as a fourth party defendant.

21. The applicable insurance policy provides coverage for a loss when there is "property damage."[1]

22. Under Section I of the policy, Coverage A – Bodily Injury and Property Damage Liability, the policy provides the following:

---

[1] The policy also covers advertising injuries and medical payment coverage which are not implicated in this situation.

-5-

        **1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    \*                      \*                      \*

23. Section V of the policy, provides the definition of the following terms:

    **13.** **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    **17.** **"Property damage"** means:
        1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
        2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    \*                      \*                      \*

24. The applicable insurance policy also contains various coverage exclusions. In pertinent part, the policy provides the following:

    **2. Exclusions**

    This insurance does not apply to:

    **1. Damage To Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operation hazards."

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

     &ast;         &ast;        &ast;

25. The applicable policy contains an endorsement which includes a pollution exclusion. In pertinent part, the policy provides the following:

     &ast;         &ast;        &ast;

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f, under Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

f. **Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

     &ast;         &ast;        &ast;

26. The applicable policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

27. The applicable policy also contains the following endorsement with an asbestos exclusion:

*                                        *                                        *

**EXCLUSION – ASBESTOS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES, Coverage A Bodily Injury and Property Damages Liability,** paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

"Bodily injury:, "property damage" or "personal and advertising injury" arising out   of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "asbestos".

As used in this exclusion, "Asbestos" means the material in any form.

*                                        *                                        *

28. Plaintiffs assert that Defendant's defective workmanship in removing and installing exterior windows and doors does not constitute an "occurrence" under the applicable policy.

29. Plaintiffs assert that Defendant's faulty workmanship, including the cost to repair and remedy the work, does not fit the definition of "property damage" under the applicable policy.

30.     Pursuant to the applicable insurance policy, "property damage" to Defendant's own work is not covered under the policy.

31.     Plaintiffs further assert that any damages caused by Defendant's disturbance, release and or discharge of asbestos containing material are not covered under the applicable policy due to the pollution and asbestos coverage exclusions.

32.     This Court is asked to, and should, exercise its discretion to determine the rights and obligations under the applicable insurance policy and to grant ancillary relief and award damages to Plaintiffs as equity, law and justice may require. Any preconditions to the assertion of this action by Plaintiffs have been met.

33.     Declaratory relief and ancillary relief are appropriate under 28 U.S.C. §§ 2201-2202 and Fed.R.Civ.P. 57. Pursuant to Rule 57, Plaintiffs pray that the Court grant a hearing in this action.

## SECOND CLAIM FOR RELIEF
### (Reimbursement)

34.     Plaintiffs re-assert and incorporate herein, by reference, the allegations contained in Paragraphs 1 through 33 as if fully set forth herein.

35.     Plaintiffs provided Defendant with a defense under a reservation of rights in the underlying lawsuit.

36.     Pursuant to *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083 (Colo. 1991), Plaintiffs are entitled to reimbursement for the costs and attorney's fees associated with the defense of Defendant in the underlying action.

37. In order to be made whole, Plaintiffs are entitled to and hereby pray for statutory, equitable, moratory and or other prejudgment interest on the sums found to be due to Plaintiffs from Defendant.

WHEREFORE, Plaintiffs State National and Next pray for a hearing in accordance with Fed.R.Civ.P. 57 and a declaratory judgment pursuant to the authority set forth in Rule 57 and 28 U.S.C. sections 2201 and 2202 adjudging and determining the rights and obligations under the applicable insurance contract, for an award of their just damages, prejudgment interest and the costs of this action and for such other and further relief as the Court may deem just and proper.

DATED: February 14, 2022

Respectfully submitted,

By: *s/ Justin H. Zouski*
Justin H. Zouski
TUCKER HOLMES, P.C.
9200 E. Mineral Avenue, Suite 330
Centennial, CO 80112-3415
Phone: (303) 694-9300
Fax: (303) 694-9370
E-mail: jhz@tucker-holmes.com
*Attorneys for Plaintiffs*